# UNITED STATES DISTRICT COURT

# FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ROSENDA FLORES, et al.,<br><br>Plaintiffs,<br><br>v.<br><br>CITY OF CALIFORNIA CITY, et al.,<br><br>Defendants. | No. 1:18-cv-00703-DAD-JLT<br><br>ORDER GRANTING DEFENDANTS' MOTION TO DISMISS, MOTION FOR A MORE DEFINITE STATEMENT, AND MOTION TO STRIKE PORTIONS OF PLAINTIFF'S SECOND AMENDED COMPLAINT<br><br>(Doc. No. 31) |

This matter is before the court on defendants' motion to dismiss, motion for a more definite statement, and motion to strike portions of plaintiffs' second amended complaint ("SAC"). (Doc. No. 31.) A hearing on the motions was held on April 2, 2019. Attorney Olaf Landsgaard appeared telephonically on behalf of plaintiffs, and attorney Gary Smith appeared telephonically on behalf of defendants. The court has considered the parties' briefs and oral arguments, and for the reasons set forth below, will grant defendants' motion in its entirety.

**BACKGROUND**

On August 13, 2018, defendants filed a motion to dismiss and strike portions of plaintiffs' first amended complaint ("FAC"). (Doc. No. 11.) The undersigned referred that motion to the assigned magistrate judge on September 6, 2018. (*See* Doc. No. 14.) On September 25, 2018, the magistrate judge issued findings and recommendations, recommending that the motion to dismiss

1

the FAC be granted. (Doc. No. 19.) Therein, the magistrate judge found that plaintiffs failed to allege sufficient facts to support their municipal liability claims brought under 42 U.S.C. § 1983 and recommended that plaintiffs' claims against defendant City of California City (the "City") be dismissed with leave to amend. (*Id.* at 6.) The magistrate judge also determined that plaintiffs had included material in the FAC "only for harassment purposes," and recommended the striking of allegations related to "defendant Huizar's previous arrest and conviction and claims that he is a child molester." (*Id.* at 7.) Finally, the magistrate judge recommended that plaintiffs' request for dismissal of their class claims be granted. (*Id.* at 6.) On January 2, 2019, the undersigned issued an order adopting these recommendations in full. (Doc. No. 25.)

On January 9, 2019, plaintiffs filed their SAC. (Doc. No. 26.) The SAC alleges facts and asserts claims that are substantially similar to those in the FAC. (*Compare* Doc. No. 26, *with* Doc. No. 8.) Like its predecessor, the SAC is drafted in a confusing fashion, with factual allegations peppered throughout. Despite this lack of clarity, however, the gravamen of the SAC appears to be that, on the night of July 18, 2017, police officers employed by the City forcefully entered plaintiffs' home without a warrant or authority, seized plaintiffs, arrested plaintiff Ciriaco Flores, searched plaintiffs' home, and employed excessive force during the entire ordeal. (Doc. No. 26 at 2–3.) Based on these allegations, plaintiffs assert the following causes of action: (1) a trespass claim against defendant Whiting, the City, and Does 1–10; (2) an equal protection and due process claim that appears to be asserted against defendant Huizar and the City; (3) a § 1983 claim alleging violations of plaintiffs' Second, Fourth, Fifth, Eighth, and Fourteenth Amendment rights that appears to be asserted against defendant Whiting and Does 1–10; (4) another equal protection and due process claim against all individual defendants; (5) a wrongful arrest claim against all defendants; and (6) a false imprisonment claim against all defendants. (*Id.* at 10–26.) Plaintiffs seek declaratory relief, compensatory damages, punitive damages, exemplary damages, attorneys' fees and costs, other costs, and any other relief the court deems proper. (*Id.* at 27–28.)

On February 15, 2019, defendants filed the pending motion to dismiss plaintiffs' municipal liability claims, as well as a motion for a more definite statement and a motion to strike

/////

portions of the SAC. (Doc. No. 31.) On March 1, 2019, plaintiffs filed their opposition to the pending motions, and on March 26, 2019, defendants filed their reply thereto. (Doc. Nos. 36, 37.)

**LEGAL STANDARDS**

**A.      Motion to Dismiss Pursuant to Federal Rule of Civil Procedure 12(b)(6)**

The purpose of a motion to dismiss pursuant to Rule 12(b)(6) is to test the legal sufficiency of the complaint. *N. Star Int'l v. Ariz. Corp. Comm'n*, 720 F.2d 578, 581 (9th Cir. 1983). "Dismissal can be based on the lack of a cognizable legal theory or the absence of sufficient facts alleged under a cognizable legal theory." *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1990). A plaintiff is required to allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

In determining whether a complaint states a claim on which relief may be granted, the court accepts as true the allegations in the complaint and construes the allegations in the light most favorable to the plaintiff. *Hishon v. King & Spalding*, 467 U.S. 69, 73 (1984); *Love v. United States*, 915 F.2d 1242, 1245 (9th Cir. 1989). However, the court need not assume the truth of legal conclusions cast in the form of factual allegations. *United States ex rel. Chunie v. Ringrose*, 788 F.2d 638, 643 n.2 (9th Cir. 1986). While Rule 8(a) does not require detailed factual allegations, "it demands more than an unadorned, the defendant-unlawfully-harmed-me accusation." *Iqbal*, 556 U.S. at 678. A pleading is insufficient if it offers mere "labels and conclusions" or "a formulaic recitation of the elements of a cause of action." *Twombly*, 550 U.S. at 555; *see also Iqbal*, 556 U.S. at 676 ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."). Moreover, it is inappropriate to assume that the plaintiff "can prove facts which it has not alleged or that the defendants have violated the . . . laws in ways that have not been alleged." *Associated Gen. Contractors of Cal., Inc. v. Cal. State Council of Carpenters*, 459 U.S. 519, 526 (1983).

/////

## B. Motion for a More Definite Statement Pursuant to Federal Rule of Civil Procedure 12(e)

Rule 12(e) states that a party may move for a more definite statement if the pleading is "so vague and ambiguous that the party cannot reasonably prepare a response." Fed. R. Civ. P. 12(e). The moving party "must point out the defects complained of and the details desired." *Id.* Such motions are "not favored by the courts since pleadings in federal courts are only required to fairly notify the opposing party of the nature of the claim." *Griffin v. Cedar Fair, L.P.*, 817 F. Supp. 2d 1152, 1154 (N.D. Cal. 2011) (quoting *Resolution Trust Corp. v. Dean*, 854 F. Supp. 626, 629 (D. Ariz. 1994)). Therefore, motions for a more definite statement "should not be granted unless the defendant cannot frame a responsive pleading." *Famolare, Inc. v. Edison Bros. Stores, Inc.*, 525 F. Supp. 940, 949 (E.D. Cal. 1981).

## C. Motion to Strike Pursuant to Federal Rule of Civil Procedure 12(f)

Rule 12(f) states that a court may strike from a complaint "any redundant, immaterial, impertinent, or scandalous matter." Fed. R. Civ. P. 12(f). "'Immaterial' matter is that which has no essential or important relationship to the claim for relief or the defenses being pleaded[,] [and] '[i]mpertinent' matter consists of statements that do not pertain, and are not necessary, to the issues in question." *Fantasy, Inc. v. Fogerty*, 984 F.2d 1524, 1527 (9th Cir. 1993) (citation omitted), *rev'd on other grounds by* 510 U.S. 517 (2004). "[T]he function of a 12(f) motion to strike is to avoid the expenditure of time and money that must arise from litigating spurious issues." *Sidney–Vinstein v. A.H. Robins Co.*, 697 F.2d 880, 885 (9th Cir. 1983). However, motions to strike are generally disfavored and "should not be granted unless it is clear that the matter to be stricken could have no possible bearing on the subject matter of the litigation." *Neveu v. City of Fresno*, 392 F. Supp. 2d 1159, 1170 (E.D. Cal. 2005) (citation and quotation marks omitted). Whether to grant a motion to strike is within the sound discretion of the court, but the court must view the pleading in a light most favorable to the non-moving party and resolve any doubt as to the relevance of the challenged allegations in favor of the non-moving party. *See In re 2TheMart.com, Inc. v. Sec. Litig.*, 114 F. Supp. 2d 955, 965 (C.D. Cal. 2000).

/////

**ANALYSIS**

Defendants move to dismiss plaintiffs' municipal liability claims, arguing that these claims fail to state a cognizable claim for relief. (Doc. No. 31 at 2.) Defendants also move for more definite statements with regard to plaintiffs' second, third, fifth, and sixth causes of action. (*Id.* at 2–3.) Finally, defendants move to strike other portions of the SAC. (*Id.* at 2.)

Plaintiffs' opposition, like the SAC, is difficult to decipher. (*See* Doc. No. 36.) The filing is devoid of any headings, cites to cases that appear to be inapplicable to the issues presented in the motion to dismiss, and is generally difficult to follow. Nevertheless, it appears that plaintiffs object to the contention that their municipal liability claims are not sufficiently pled and argue that the claims for which defendants seek more definite statements are sufficiently alleged. (*Id.* at 3–4.) Plaintiffs do not object to defendants' motion to strike.

**A.     Motion to Dismiss Plaintiffs' *Monell* Claims**

Defendants seek dismissal of plaintiffs' claims against the City. Defendants contend that this allegation, brought on a theory of *Monell* liability, fails to include sufficient factual allegations to establish the existence of a policy or custom even if proven to be true. (Doc. No. 31 at 6–8); *see also Monell v. Dep't of Soc. Servs. of City of N.Y.*, 436 U.S. 658 (1978). The court agrees.

It is well-established that "a municipality cannot be held liable *solely* because it employs a tortfeasor—or, in other words, a municipality cannot be held liable under § 1983 on a *respondeat superior* theory." *Monell*, 436 U.S. at 692; *see also Bd. of Cty. Comm'rs of Bryan Cty. v. Brown*, 520 U.S. 397, 403 (1997). To state a *Monell* claim against the City, a plaintiff "must demonstrate that an 'official policy, custom, or pattern' on the part of [the city] was 'the actionable cause of the claimed injury.'" *Tsao v. Desert Palace, Inc.*, 698 F.3d 1128, 1143 (9th Cir. 2012) (quoting *Harper v. City of Los Angeles*, 533 F.3d 1010, 1022 (9th Cir. 2008)). A *Monell* claim can be established in one of three ways. *See Thomas v. County of Riverside*, 763 F.3d 1167, 1170 (9th Cir. 2014). First, a local government may be held liable when it acts "pursuant to an expressly adopted policy." *Id.* (citing *Monell*, 436 U.S. at 694); *Lytle v. Carl*, 382 F.3d 978, 982 (9th Cir. 2004). Second, a public entity may be held liable for a "longstanding practice or custom."

*Thomas*, 763 F.3d at 1170. Such circumstances may arise when, for instance, the public entity "fail[s] to implement procedural safeguards to prevent constitutional violations" or when it fails to adequately train its employees. *Tsao*, 698 F.3d at 1143 (citing *Oviatt v. Pearce*, 954 F.2d 1470, 1477 (9th Cir. 1992)); *see also Connick v. Thompson*, 563 U.S. 51, 61 (2011) ("A municipality's culpability for a deprivation of rights is at its most tenuous where a claim turns on a failure to train."); *Flores v. County of Los Angeles*, 758 F.3d 1154, 1159 (9th Cir. 2014) (requiring a plaintiff asserting a claim based on a failure to train to allege facts showing that defendants "disregarded the known or obvious consequence that a particular omission in their training program would cause municipal employees to violate citizens' constitutional rights") (internal brackets omitted) (quoting *Connick*, 563 U.S. at 61); *Connick*, 563 U.S. at 62 ("A pattern of similar constitutional violations by untrained employees is 'ordinarily necessary' to demonstrate deliberate indifference for purposes of failure to train.") (citation omitted). "A custom or practice can be inferred from widespread practices or evidence of repeated constitutional violations for which the errant municipal officers were not discharged or reprimanded." *Hunter v. County of Sacramento*, 652 F.3d 1225, 1233 (9th Cir. 2011). "Third, a local government may be held liable under § 1983 when 'the individual who committed the constitutional tort was an official with final policy-making authority' or such an official 'ratified a subordinate's unconstitutional decision or action and the basis for it.'" *Clouthier v. County of Santa Clara*, 591 F.3d 1232, 1250 (9th Cir. 2010) (quoting *Gillette v. Delmore*, 979 F.2d 1342, 1346–47 (9th Cir. 1992)), *overruled on other grounds by Castro v. County of Los Angeles*, 833 F.3d 1060, 1070 (9th Cir. 2016).

As was the case with the original complaint, plaintiffs' SAC fails to provide *any* factual allegations supporting their conclusions that the defendant City maintains unconstitutional policies, procedures, or customs that caused the alleged constitutional violations. With respect to plaintiffs' municipal liability claims, the SAC alleges only the following:

(1) Plaintiff Ciriaco Flores' "arrest was achieved using excessive force and a policy against the citizens of the California City to keep and bear arms in their homes." (Doc. No. 26 at 3.)

6

| | | |
|---|---|---|
| 1 | (2) | "Under the direction of defendant FRANK GARCIA HUIZAR, with the approval of the Mayor and the administration, the City of California City quit issuing concealed weapon permits, sought to do away with reserve officers, and established a policy against homeowners keeping and bearing arms within their homes." (*Id.*) |
| 5 | (3) | "Plaintiff sues the entity Defendants . . . for carrying out a policy or custom, including zero tolerance of homeowner's [sic] owning or possessing firearms and zero tolerance of any person not employed by the City . . . to have a shotgun, rifle, or handgun in their home, forceable entry into occupied homes after 10:00 p.m., inadequate training, and deliberately poor report writing." (*Id.* at 4.) |
| 10 | (4) | "[O]n Tuesday, June 16, 2015, . . . officer[s] with the California City Police Department . . . enter[ed] [a Black woman's] home . . . then forced their way inside and injured [the woman]. While [the woman] was on the floor, topped by [one officer], [another officer] kicked her . . . then pulled [a] gun and threatened to shoot [the woman's] 14-year old daughter. . . . Th[is] entry to the home . . . was made without a warrant and without probable cause." (*Id.* at 7–8.) |
| 16 | (5) | "Plaintiffs are informed and believe that the forced entry into homes of minorities and others without a search warrant against the wishes of the occupants is a policy taught by The City." (*Id.* at 8.) |
| 19 | (6) | "It has also been the policy of the City . . ., from 2011 to 2016, to hire and keep officers, such as Frank Garcia Huizar, who lie on their applications." (*Id.*) |
| 21 | (7) | The City "caused and encouraged a policy that California City police officers could trespass into their home without probable cause or reasonable suspicion . . . with the intention of caring [sic] out a policy against Hispanics to keep and bear arms in their homes." (*Id.* at 8–9.) |
| 25 | (8) | "[F]orced entry into homes of Hispanics and Blacks without a warrant is a pattern and policy of the City . . . as was the policy to deprive all non-police of the right to keep and bear arms within the City." (*Id.* at 9.) |
| 28 | ///// | |

| | | |
|---|---|---|
| 1 | (9) | "[R]etaliatory and vindictive charging is a common custom and practice of defendants |
| 2 | | under the direction of Lt. Huizar." (*Id.* at 11.) |
| 3 | (10) | "The arrest and prosecution of Flores was based on a policy against citizens of California |
| 4 | | City's right to keep and bear arms initiated by defendant Lt. Huizar." (*Id.* at 22.) |
| 5 | (11) | "DEFENDANTS have maintained policies, procedures, practices, and/or customs of |
| 6 | | discriminating against persons men who assert their rights to quiet enjoyment of their |
| 7 | | homes—and the right to demand a search warrant before entry could be made into their |
| 8 | | homes. Said policies, procedures, customs and practices evidence a deliberate |
| 9 | | indifference to the constitutional rights of PLAINTIFF and other non-public officials. . . . |
| 10 | | This indifference is and was manifested by the failure to change, correct, revoke, or |
| 11 | | rescind these policies, procedures, practices and/or customs in light of prior knowledge by |
| 12 | | DEFENDANTS of indistinguishably similar incidents of unjustified arrests." (*Id.* at 24.) |

This is the extent of plaintiffs' allegations in support of their municipal liability claim. These conclusory allegations, however, are unsupported by any specific factual allegations. If plaintiffs believe that an unlawful city policy caused the alleged constitutional violations, that policy must be specifically identified, and if plaintiffs believe that unlawful city practices or customs caused the alleged constitutional violations, facts—rather than mere conclusions—must be alleged to demonstrate that such practices or customs are widespread. *Shelley v. County of San Joaquin*, 954 F. Supp. 2d 999, 1009 (E.D. Cal. 2013) ("To survive a motion to dismiss, 'a bare allegation that government officials' conduct conformed to some unidentified government policy or custom' is insufficient; instead, plaintiffs' complaint must include 'factual allegations that . . . plausibly suggest an entitlement to relief, such that it is not unfair to require the opposing party to be subjected to the expense of discovery and continued litigation.'") (quoting *AE ex rel. Hernandez v. Cty. of Tulare*, 666 F.3d 631, 636 (9th Cir. 2012)). Moreover, the fact that officers employed by the City allegedly forced their way into a Black woman's home and employed excessive force against her does not establish a custom or policy of "ent[ering] into the homes of minorities and others without a search warrant" because, as the Ninth Circuit has stated, "one or two incidents are insufficient to establish a custom or policy." *Oyenik v. Corizon Health, Inc.*,

696 Fed. App'x 792, 794 (9th Cir. 2017)[1]; *see also Trevino v. Gates*, 99 F.3d 911, 918 (9th Cir. 1996) ("Liability for improper custom may not be predicated on isolated or sporadic incidents; it must be founded upon practices of sufficient duration, frequency and consistency that the conduct has become a traditional method of carrying out that policy."); *Christie v. Iopa*, 176 F.3d 1231, 1235 (9th Cir. 1999) ("A single constitutional deprivation ordinarily is insufficient to establish a longstanding practice or custom.").

Plaintiffs have failed to identify an unlawful City policy in their SAC, nor have they alleged facts supporting the conclusion that the City maintains unconstitutional customs or practices that caused the alleged constitutional violations. Simply describing allegedly problematic or illegal behavior and appending the phrase "pursuant to a custom or policy" to that description is not sufficient to plead municipal liability. *AE ex rel. Hernandez*, 666 F.3d at 637 (explaining that *Monell* claims "may not simply recite the elements of a cause of action, but must contain sufficient allegations of underlying facts to give fair notice and to enable the opposing party to defend itself effectively").

Given the absence of factual allegations in the SAC supporting plaintiffs' claim of an unconstitutional policy, practice, or custom which caused the constitutional violations alleged here, and because the court previously dismissed plaintiffs' FAC with leave to amend to cure the same deficiency, the court concludes that granting further leave to amend the *Monell* claims at this juncture would be futile. Accordingly, the court will dismiss plaintiffs' *Monell* claims against the City without further leave to amend. *United States ex rel. Lee v. SmithKline Beecham, Inc.*, 245 F.3d 1048, 1052 (9th Cir. 2001) ("[L]eave to amend should be granted unless the district court 'determines that the pleading could not possibly be cured by the allegation of other facts.'") (quoting *Lopez v. Smith*, 203 F.3d 1122, 1127 (9th Cir. 2000)). However, plaintiffs' *Monell* claims will also be dismissed without prejudice, subject to plaintiffs' filing of a motion to amend the complaint in the future if facts supporting these claims are uncovered during the discovery phase of this litigation making the filing of such a motion appropriate.

---

[1] Citation to this unpublished Ninth Circuit opinion is appropriate pursuant to Ninth Circuit Rule 36–3(b).

9

**B.      Motion for a More Definite Statement**

Defendants next argue that several of plaintiffs' causes of action are "impermissibly broad and lack specificity." (Doc. No. 31 at 9.) For instance, defendants take issue with plaintiffs' second cause of action alleging violations of equal protection and due process, arguing that this claim fails to identify which defendants it is asserted against. (*Id.*) Moreover, defendants contend that this cause of action is duplicative of plaintiffs' fourth cause of action, which also alleges equal protection and due process violations, but specifies that it is asserted against all defendants. (*Id.*) Finally, defendants argue that the third cause of action—which is styled as "Cause of Action #3: 42 U.S.C. § 1983," and alleges violations of plaintiffs' Second, Fourth, Fifth, Eighth, and Fourteenth Amendment rights (Doc. No. 26 at 14)—fails to identify the defendants against whom it is asserted and fails to clarify the basis for each of the asserted constitutional violations. (Doc. No. 31 at 9–10.)

The court will grant defendants' motion for a more definite statement. While the SAC's second and third causes of action refer to various defendants, the SAC fails to state who these causes of actions are asserted against with sufficient specificity. Neither defendants nor the court should have to parse through plaintiffs' allegations and causes of action to determine which cause of action is asserted against which named defendant. Similarly, plaintiff's third cause of action "is so indefinite that the defendant[s] cannot ascertain the nature of the claim[s] being asserted." *Sagan v. Apple Computer, Inc.*, 874 F. Supp. 1072, 1077 (C.D. Cal. 1994). Under the umbrella of "42 U.S.C. § 1983," this third cause of action alleges violations of five different constitutional amendments, yet the SAC does not clarify the factual basis for each of the alleged constitutional violations. Defendants cannot be reasonably expected to frame a response to such a vague and ambiguous cause of action.

Moreover, many of plaintiffs' causes of action appear to be duplicative. For example, the third cause of action alleges violations of plaintiffs' Fifth and Fourteenth Amendment rights, but the second and fourth causes of action also independently allege violations of plaintiffs' equal protection and due process rights. (*See* Doc. No. 26 at 11–21.) Similarly, plaintiffs' sixth cause of action for false imprisonment appears to be duplicative of their fifth cause of action for

wrongful arrest. (*See id.* at 21–26); *see also Watts v. County of Sacramento,* 256 F.3d 886, 891 (9th Cir. 2001) ("Under California law, the torts of false arrest and false imprisonment are not separate torts, as false arrest is 'but one way of committing a false imprisonment.'") (citation omitted); *Moore v. City & Cty. of San Francisco*, 5 Cal. App. 3d 728, 735 (1970) ("[S]ince an arrest involves detention or restraint, false arrest always involves an imprisonment, and a suit for false imprisonment automatically embraces the wrongful arrest; and two separate torts are not involved.").

Accordingly, the court will grant defendants' motion for a more definite statement. In addition to clearly indicating which defendants each cause of action is asserted against, plaintiffs are directed to consolidate their causes of action if they elect to file a third amended complaint. Plaintiffs should not, for example, allege three different causes of action alleging violations of their equal protection and due process rights. Moreover, in any third amended complaint, plaintiffs are directed to divide their third cause of action, if it is realleged, into independent causes of action, so that each constitutional violation is plead separately and not collectively under the umbrella of "42 U.S.C. § 1983." Finally, to the extent possible, plaintiffs are directed to plead all the factual allegations in one section of their third amended complaint.

**C.  Motion to Strike**

Next, defendants move to strike references to a class action or a class and paragraph 111 of the SAC, which reads "Defendant Frank Garcia Huizar had been convicted of reckless discharge of a gun for firing his service revolver out of a car at a building, while drunk and off duty." (Doc. No. 31 at 8–9.)

In its prior order, the undersigned adopted the magistrate judge's recommendation that plaintiffs' class claims be dismissed. (Doc. No. 25 at 2.) Given that the court has already dismissed those claims, the court will strike from the SAC any reference to a class, Rule 23, or a class action, and directs plaintiffs to not include any reference to a class, Rule 23, or a class action in any third amended complaint they might elect to file.

Next, in those same findings and recommendations, the magistrate judge found that "the plaintiffs refer to Frank Garcia Huizar in an inflammatory manner without providing factual

support for the references." (*See* Doc. No. 19 at 3.) Throughout the FAC, the plaintiffs alleged that Huizar was "corrupt," a "convicted gun handler," and was fired from his position, without either providing factual allegations supporting these assertions or explaining how the alleged conviction or filing are relevant to the matter now before the court. The magistrate judge recommended striking these allegations from the FAC as impertinent and immaterial to the action and the undersigned adopted that recommendation. (Doc. No. 25 at 4.) Here, the allegations about defendant Huizar in paragraph 111 of the SAC suffer from the same defects as the allegations referring to him in the FAC. Plaintiffs have failed to offer any explanation for how facts relating to defendant Huizar allegedly discharging a gun from a vehicle while off duty and drunk are relevant to the alleged violations of their constitutional rights asserted in their SAC. Consequently, the allegations related to defendant Huizar's prior conviction as well as other inflammatory material will be stricken from the SAC. Any third amended complaint that plaintiffs elect to file shall not include any allegations about defendant Huizar that are impertinent or immaterial to this action. Plaintiffs failure to abide by this order will likely result in the imposition of sanctions.

**CONCLUSION**

For the reasons set forth above:

1. Defendants' motions (Doc. No. 31) are granted in full, and:
    a. Plaintiffs' municipal liability claims are dismissed without leave to amend and without prejudice to the filing of a future motion seeking further leave to amend if facts supporting such claims are uncovered during the discovery phase of this case; and
    b. Plaintiffs' other claims are dismissed with leave to amend and any third amended complaint plaintiffs may elect to file shall:
        i. Clearly state which defendant(s) each cause of action is asserted against;
        ii. Divide into separate causes of action the constitutional violations brought under 42 U.S.C. § 1983;

    iii. To the extent possible, set forth all factual allegations in support of their claims in one section;

    iv. Not include any reference to a class or class action;

    v. Not include any allegations with respect to defendant Huizar that are impertinent and immaterial to this action; and

    vi. Be filed and served within fourteen (14) days of the date of this order.

IT IS SO ORDERED.

Dated: **April 30, 2019**

*/s/ Dale A. Drozd*
UNITED STATES DISTRICT JUDGE